IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STANLEY DONALD SHAW,

      Plaintiff,

  vs.                                                                                                 1:16-cv-00285-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Stanley Donald Shaw's Motion to Reverse and Remand to Agency for Rehearing, filed September 6, 2016, and fully briefed on November 23, 2016. Docs. 18, 20, 22, 23. The parties have consented to my entering a final judgment in this case. Docs. 5, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards when assessing the agency consultants' medical opinions. I therefore GRANT Mr. Shaw's motion and remand this case to the Commissioner for further proceedings.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 416.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.     Background and Procedural History

Mr. Shaw is a 52-year-old man with a ninth-grade education and a history of working in construction.  AR[4] 128, 221, 247, 275.  Mr. Shaw lives with his ex-wife in Albuquerque, New Mexico.  AR 129, 140–41, 245.  Mr. Shaw initially applied for Supplemental Security Income ("SSI") benefits on March 2, 2012, alleging disability since July 1, 2005.[5]  AR 221–26.  Mr.

---

[3] 20 C.F.R. pt. 404, Subpt. P, app. 1.

[4] Documents 15-1 through 15-22 comprise the sealed administrative record ("AR").  When citing to the record, the Court cites to the AR's internal pagination rather than to the CM/ECF document number and page.

[5] Mr. Shaw submitted a second application for SSI benefits on March 29, 2016, which was approved at the initial level.  Doc. 24.  "Approval of a 'subsequent claim does not invade the

Shaw alleged he was disabled due to injuries to his neck, back, pelvis, elbow, and ribs, numbness and loss of feeling in his arms, hands, feet, and legs, blindness in his left eye, memory lapses, problems with balance, and weight restrictions. AR 246.

Mr. Shaw's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. AR 152–67, 168–85, 193–96. On May 30, 2014, ALJ Michelle Lindsay conducted a hearing. AR 122–51. ALJ Lindsay issued her unfavorable decision on September 25, 2014. AR 103–21. At step one, ALJ Lindsay found that Mr. Shaw had not engaged in substantial, gainful activity since his application date of January 13, 2012. AR 108. Because Mr. Shaw had not engaged in substantial gainful activity for at least 12 months, ALJ Lindsay proceeded to step two. At step two, ALJ Lindsay found that Mr. Shaw suffered from the severe impairments of a "history of fractured elbow, fractured pelvis; disc disease of the lumbar and cervical spine, status post cervical fusion; compression fractures at T11 and L3; mild to moderate osteoarthritis of the hips; and dysthymic disorder[6] due to general medical conditions." *Id*. At step three, ALJ Lindsay found that none of Mr. Shaw's impairments—alone or in combination—

---

period previously adjudicated by the ALJ decision.'" *Jaramillo v. Colvin*, 184 F. Supp. 3d 1086, 1092 (D.N.M. 2015) (quoting HALLEX (the Commissioner's "Hearings, Appeals, and Litigation Law Manual") § 1-5-3(III)(B)(2)). "Any favorable determination on the subsequent claim made while the request for review of the hearing decision in the prior claim is pending will be limited to the period beginning on the day after the date of the ALJ's decision on the prior claim." *Id.* (quoting HALLEX § I-5-3(I)(A)) (internal quotations omitted). Therefore, the approval of Mr. Shaw's second application is not determinative of the question of disability in his first application. *Id*.

6

>Dysthymic disorder, also called "persistent depressive disorder" and dysthymia (dis-THIE-me-uh), is a continuous long-term (chronic) form of depression. A person with dysthymia "may lose interest in normal daily activities, feel hopeless, lack productivity, and have low self-esteem and an overall feeling of inadequacy. These feelings last for years and may significantly interfere with your relationships, school, work and daily activities."

http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590 (last visited on Aug. 17, 2017).

met or medically equaled a Listing.  AR 108–10.

Because none of the impairments met a Listing, ALJ Lindsay assess Mr. Shaw's RFC and found that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl; can never climb ladders, ropes, or scaffolds; is limited to frequent fingering and feeling; must avoid frequent exposure to extreme cold and humidity; must avoid frequent exposure to vibration; and must avoid unprotected heights.  Further, he is able to understand, remember, and carry[ ]out only simple instructions, and is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task.

AR 110.  At step four, ALJ Lindsay determined that Mr. Shaw was unable to perform any past relevant work.  AR 114.  At step five, relying on the testimony of a vocational expert, ALJ Lindsay found that Mr. Shaw could perform the jobs of cashier, fast food worker, and mail clerk. AR 115.  Accordingly, ALJ Lindsay found that Mr. Shaw "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and is therefore not disabled.  AR 116.

The Appeals Council denied Mr. Shaw's request for review on February 22, 2016, making ALJ Lindsay's decision the final decision of the Commissioner and prompting this appeal.  AR 1–7.  Mr. Shaw filed his timely appeal on April 11, 2016.  Doc. 1.

**IV.    Mr. Shaw's Claims**

Mr. Shaw contends that ALJ Lindsay erred in her evaluation of the medical opinions of examining agency consultants Dr. Frank Hesse and Dr. Finian Murphy.  Specifically, Mr. Shaw contends that ALJ Lindsay erred by failing to state the weight she gave to Dr. Hesse's opinions, and by failing to provide adequate reasons for giving little weight to Dr. Murphy's opinions. Doc. 18 at 11–16.  I agree that the ALJ failed to apply the correct legal standard in assessing Dr.

5

Hesse's and Dr. Murphy's opinions. Consequently, I remand this case for further evaluation by the Commissioner.

## V. Discussion

An ALJ must evaluate and weigh every medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 416.927(c).

> Medical opinions are statements from acceptable medical sources that reflect judgment about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.

*Id.* at § 416.927(a)(1).

The Commissioner generally will give greater weight to the opinion of an examining physician than to one who has not examined the claimant. 20 C.F.R. § 416.927(c)(1). "[A]s the regulations governing medical opinions recognize, an examining medical-source opinion . . . is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). While an examining physician's opinion is not entitled to the deference of a treating physician's opinion, the ALJ still is required to consider an examining physician's opinion and provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

The regulations require an ALJ to consider several specific factors in weighing a medical opinion. *Id.*. The factors include the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)–(6). "The record must demonstrate that the ALJ considered all of the evidence," but there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)). Although the ALJ is not required to discuss every piece

6

of evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *See Wall v. Astrue*, 561 F.3d 1048, 1074–75 (10th Cir. 2009) (quoting *Clifton* , 79 F.3d at 1009–10).

    A.  <u>Dr. Hesse's opinion</u>

Mr. Shaw argues that the ALJ failed to state what weight she gave to Dr. Hesse's opinion.[7] Doc. 18 at 11–12. Following his examination of Mr. Shaw, Dr. Hesse identified a number of impairments and concluded that "[i]t is my impression that the patient, because of his neck and lumbar spine problems and poor memory and other problems, has difficulty in being employed." AR 564. The Commissioner contends that the ALJ considered Dr. Hesse's opinion but did not state what weight she gave that opinion because Dr. Hesse "did not indicate that Plaintiff had any specific work-related limitations" so there was nothing for the ALJ to weigh. Doc. 20 at 10–11.

An opinion by a medical provider that a claimant is disabled is not considered a "medical opinion," but instead is an opinion on an issue that is reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d) (a medical source opinion that a claimant is "disabled" or "unable to work" is not considered a "medical opinion" but is an issue reserved to the Commissioner). Dr. Hesse's opinion that Mr. Shaw would have difficulty being employed is the type of opinion on an issue that is reserved to the Commissioner. While the Commissioner "will not give any special significance" to a medical source opinion on issues reserved to the Commissioner, 20 C.F.R.

---

[7] Mr. Shaw further criticizes the ALJ for failing to discuss Dr. Hesse's recommendation for a urological evaluation but does not explain why this omission is significant. I therefore will not address this issue. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (noting that "perfunctory complaints" failing "to frame and develop an issue" are not "sufficient to invoke appellate review"); *see also Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (declining to consider issues not adequately briefed for review).

7

§ 416.927(d)(3), "such an opinion may not be disregarded, and the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1174 (D. Colo. 2012) (internal quotation and citation omitted); *see also* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). "In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)." SSR 96-5p, 1996 WL 374183, at *3.

There is no indication in the ALJ's decision that she applied these factors when considering Dr. Hesse's opinion that "because of [Mr. Shaw's] neck and lumbar spine problems and poor memory and other problems, [he] has difficulty in being employed." AR 564. The ALJ mentions Dr. Hesse only once in her decision, and only summarizes Dr. Hesse's examination notes. AR 113. Although Dr. Hesse did not indicate that Mr. Shaw had any specific work-related limitations, the ALJ still was required to weigh Dr. Hesse's opinion using the applicable factors. By ignoring the opinion altogether, the ALJ failed to apply the correct legal standard when assessing Dr. Hesse's opinion, requiring reversal.

B. Dr. Murphy's opinion

Dr. Murphy opined that Mr. Shaw had a marked limitation in his ability to carry out instructions, to concentrate, and to persist at tasks. AR 555. The ALJ gave Dr. Murphy's opinion little weight and did not account for Mr. Shaw's markedly limitation as to concentration and persistence in the RFC. AR 110, 114. As noted above, an ALJ must give specific, legitimate reasons for rejecting an opinion and demonstrate that he or she considered all of the factors when weighing the medical opinion. *See Doyal*, 331 F.3d at 764. The ALJ gave three

reasons for rejecting Dr. Murphy's opinion: 1) Dr. Murphy did not define the term "markedly"; 2) his opinion is internally inconsistent; and 3) his opinion relied solely on Mr. Shaw's subjective complaints. AR 113–14. Mr. Shaw argues that the reasons the ALJ gave for rejecting Dr. Murphy's opinions were not sufficient. Doc. 18 at 12–16. I agree.

First, the ALJ found that "the opinion is vague in that Dr. Murphy does not define the term 'markedly.'" AR 113. Dr. Murphy was hired by the Social Security Administration to perform a consultative mental status exam on Mr. Shaw. *See* AR 554; 20 C.F.R. § 416.917. Consultative exams are purchased only from qualified medical sources, 20 C.F.R. § 416.919g, and the medical sources "have a good understanding of our disability programs and their evidentiary requirements," 20 C.F.R. § 416.919n.

The term "marked" is defined by the regulations. "When we rate the degree of limitation [for concentration, persistence, or pace], we will use the following five point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). "A 'marked' limitation occurs when an impairment 'interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities.'" *Miller ex rel. Thompson v. Barnhart*, 205 F. App'x 677, 680 (10th Cir. 2006) (unpublished) (quoting 20 C.F.R. § 416.926a). A "'[m]arked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*; 20 C.F.R. § 416.926a(e)(2)(i). The listings similarly define "marked" as follows:

> Where "marked" is used as a standard for measuring the degree of limitation it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based on age-appropriate expectations) independently, appropriately, effectively and on a sustained basis.

*Heintzelman ex rel. DH v. Astrue*, 622 F. Supp. 2d 1102, 1106 (D. Kan. 2008) (quoting 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(C)). Dr. Murphy did not need to define the term "marked"


because, as a qualified medical source with a good understanding of the disability programs and evidentiary requirements, he would use the term "marked" as defined by the regulations. Accordingly, Dr. Murphy's failure to define the term "marked" is not a sufficiently legitimate reason for the ALJ to reject the opinion.[8]

Second, the ALJ asserted that Dr. Murphy's "opinion is internally inconsistent with his own essentially normal examination findings." AR 113. In support of this finding, the ALJ noted that although Mr. Shaw could not perform serial 7's or serial 3's, he was able to perform basic math calculations. AR 112. However, the performance of serial 7's and serial 3's does not test for the ability to perform basic math, but instead tests for the ability to sustain focused attention and concentration. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(C)(3). During a mental examination, "concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100." *Id*. It was inappropriate for the ALJ to conflate Mr. Shaw's ability to perform basic math skills with his ability to concentrate and persist at tasks. Dr. Murphy's opinion was not internally inconsistent in this respect, and the ALJ should not have rejected it on this basis.

Third, the ALJ's explanation that Dr. Murphy's opinion "appears to rely solely on the claimant's subjective allegations," AR 113–14, ignores the objective testing performed by Dr.

---

[8] The case cited by the Commissioner, *Bean v. Chater*, 77 F.3d 1210 (10th Cir. 1995), does not assist her. In *Bean*, the ALJ rejected a doctor's opinion that stated that the claimant had "severe limitations" because it was "generic and did not accurately assess plaintiff's true functional capabilities." *Bean*, 77 F.3d at 1214. The issue in *Bean* was not whether the doctor had defined the term "severe," but whether the use of the term "severe limitations" was enough to indicate exactly what the claimant can do in relation to the physical exertional requirements of sedentary, light, moderate, or heavy work. *Id*.

Murphy. Dr. Murphy tested Mr. Shaw's ability to concentrate by asking him to perform serial 7's and 3's, and found he was unable to perform this task. AR 558. Dr. Murphy further tested Mr. Shaw's memory by asking him to remember three words, then repeat those words three minutes later. Dr. Murphy found Mr. Shaw was unable to repeat the third word. AR 558. These tests are conducted to specifically measure a person's ability to concentrate and remember in a work setting. *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(C)(3) ("In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."). The ALJ impermissibly ignored the objective tests performed by Dr. Murphy even though Dr. Murphy's conclusion—that Mr. Shaw's "ability to carry out instructions, to concentrate and to persist at tasks is markedly limited by his psychological and medical problems"—appears based, at least in part, on objective testing. The ALJ's third reason for rejecting Dr. Murphy's opinion, therefore, also is not sufficiently legitimate because it is not supported by the record. The ALJ failed to give specific, legitimate reasons for rejecting Dr. Murphy's opinion, requiring remand.

Finally, the Commissioner argues that the ALJ properly weighed the mental medical source opinions and adopted the two reviewing psychologists' opinions that limited Mr. Shaw to performing only simple tasks. Doc. 20 at 12–13. The Commissioner's argument suggests that a limitation to simple tasks accounts for Mr. Shaw's limitation in his ability to concentrate and persist. It does not. "[T]he ability to perform simple tasks differs from the ability to stay on task." *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). It is the ability to stay on task—not the degree of complexity of the task itself—that is addressed by concentration and persistence. *Id.* Accordingly, limiting Mr. Shaw only to simple tasks did not adequately address his limited ability to concentrate and persist.

11

## VI. Conclusion

The ALJ did not follow the correct legal standards when assessing Dr. Hesse's or Dr. Murphy's opinions. Remand is required.

IT IS THEREFORE ORDERED that plaintiff Stanley Donald Shaw's Motion to Reverse and Remand to Agency for Rehearing (Doc. 18) is GRANTED. The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent